(126 So. 687)

AUTO SALVAGE CO. v. MERIWETHER et al.

No. 27458.

Feb. 3, 1930.

Rehearing Denied March 5, 1930.

Dickson & Denny, of Shreveport, for plaintiff.

Cook & Cook, of Shreveport, for defendants Meriwether and Caddo Transfer & Warehouse Co.

LAND, J.

In the suit of Minor Meriwether, Sr., v. B. M. Dority et al., in the district court of Caddo parish, a writ of provisional seizure issued, and there was seized under the writ a stock of secondhand automobile parts, claimed by plaintiff, Auto Salvage Company, and located at 2046 Texas avenue, city of Shreveport, La.

The property seized was held under seizure at 2046 Texas avenue until March 4, 1923, and was then moved by the sheriff of Caddo parish for storage to the premises of Minor Meriwether, Sr., 1544–1546 Texas street.

The wagons of the defendant, Caddo Transfer & Warehouse Company, were used by the sheriff in the removal of the property seized.

The plaintiff, Auto Salvage Company, is a corporation domiciled in the city of Shreveport, and is engaged in the business of buying and wrecking secondhand automobiles, and assorting, labeling, and selling the salvaged parts, both at wholesale and retail.

Plaintiff alleges that, at the time of the removal, its stock of automobile parts had been assorted, classified, and labeled at great cost and expense, and that the parts of the particular model of each automobile had been placed in separate bins and receptacles.

That defendants were warned, when the stock was about to be removed, against the mixing and mingling of the respective parts,

and were advised that, if the stock should be mixed or mingled, its value would be practically destroyed.

That, notwithstanding this warning, defendants negligently and carelessly commingled the parts, in the removal of its stock, and thereby damaged its value of $18,000 to the extent of 95 per cent. or in the sum of $17,100, for which plaintiff prays for judgment in solido against each of the defendants, with 5 per cent. per annum interest from judicial demand.

The answers of all the defendants consist, in part, of a general denial of the allegations in plaintiff's petition.

The sheriff, in his answer, specially avers that he acted in good faith and under the authority of the writ of provisional seizure, and the instructions of plaintiff in that case.

Defendants, Minor Meriwether, Sr., and the Caddo Transfer & Warehouse Company, specially plead in their joint answer that these defendants did not do the moving, but that it was done by the sheriff, without any instructions as to the method by these defendants, and that although certain wagons belonging to the Caddo Transfer & Warehouse Company were used by the sheriff, they were hired by the day and were not under the instructions or directions of either of these defendants.

As stated in defendants' brief, there was no effort between the defendants to fix the liability among themselves, if any existed.

The case went to trial under these issues, and judgment was rendered in favor of plaintiff against each of the defendants in solido in the sum of $350, with legal interest from judicial demand.

From this judgment, the plaintiff and all the defendants have appealed.

As only questions of fact are mainly involved in the case, we have read the testimony

of each witness with care, and, although there is some conflict, we agree with the trial judge that a fair preponderance of the evidence supports plaintiff's allegation that the automobile parts were negligently commingled in their removal by defendants.

■ The evidence also satisfies us that the mere mixing and mingling of the automobile parts, when removed by defendants, did not practically destroy their value.

It appears from the evidence that only about 10 per cent. of the car, when wrecked, is saved and is marketable. These parts consist of the larger parts of the car, such as carburetors, radiators, springs, axles, wheels, fenders, rear housings, etc.

But the smaller parts of the car, such as nuts, bearings, brake rods, piston pins, head gaskets, etc., are usually junked, as such pieces can be had new as cheaply as second-hand, are frequently worn out, or belong to obsolete cars.

These smaller parts were all included in the sale made by plaintiff of its stock to William Bros., auto wreckers, for the price of $1,000. This was done by agreement of all the parties concerned in order to minimize the damages, and without affecting the issues involved in this case.

■ These smaller parts were paid for and delivered at the garage of William Bros., the purchaser. Whether good, bad, or indifferent, plaintiff cannot recover anything more for them in the present suit without clear and satisfactory proof as to the diminution in value to which they may have been reduced by the commingling of the parts, if such be the case. This proof, however, plaintiff has failed to make, in our opinion.

As far as the separation and re-assortment of the larger parts of a mixed stock are concerned, the evidence before us is abundant and

convincing that this can be done readily. These larger parts constitute, in fact, the real value of a wrecked car.

The stock of plaintiff was estimated by various witnesses at $500, $600, $700 and $800. It actually sold for $1,000 and no more. R. J. Williams testified that, after the stock was re-assorted by William Bros., he considered it worth $500 or $600, as a part of it was old. Some of it also consisted of parts of obsolete cars. This witness was in an excellent position to examine the stock and estimate its value.

Under these circumstances, we are forced to the conclusion that the cost of re-assortment must be adopted in this case as the measure of damages, and not the market value of the stock, since it was not destroyed.

However, we cannot accept as a basis for such damages the sum of $200, estimated by the William Bros. as the cost of the re-assortment, since the stock was in much more confused condition when it was delivered at the garage of William Bros. than when it was stored on the premises of Minor Meriwether, Sr.

Several witnesses have testified that this stock, when on these premises, could have been re-assorted for a cost of $50 or $75. As this is the testimony of expert witnesses, we feel justified in accepting and acting upon it as a tangible and sufficient basis for assessment of damages in the case. We have concluded to adopt the mean price of $62.50 as the measure of reasonable compensation for the service of re-assorting the stock of plaintiff at the place of storage, and, necessarily, this sum is the amount of damages that plaintiff is entitled to recover in the case.

It is therefore ordered that the judgment appealed from be amended by reducing the amount of damages awarded to plaintiff by the lower court from $350 to $62.50.

It is now ordered that the judgment, as amended, be affirmed, and that plaintiff pay the costs of appeal.